## Stone, Superintendent, *v.* Fritts.

[No. 20,962. Filed November 26, 1907.]

1. Schools.—*Licenses to Teach.*—*Contracts.*—A license to teach school is not of a contractual nature, and statutes authorizing the issuance thereof may be repealed at the pleasure of the legislature. p. 365.

2. Constitutional Law.—*Schools.*—*Licenses.*—*Rights Conferred.*— Section nine of the act of 1899 (Acts 1899, p. 240, §6393 Burns 1908), providing that county superintendents shall have power to revoke teachers' licenses for incompetency, immorality, cruelty or general neglect, and that such revocation shall terminate a teacher's employment in school work, is not in violation of the constitutional provision (Art. 1, §12), providing that for injury done to a man, "in person, property or reputation" he shall have a remedy by due course of law. p. 365.

3. Same.—*Police Power.*—*Private Property.*—*Schools.*—*Licenses.*— Section nine of the act of 1899 (Acts 1899, p. 240, §6393 Burns 1908), providing that county superintendents shall have power to revoke teachers' licenses for incompetency, immorality, cruelty or general neglect, and that such revocation shall terminate a teacher's employment, being in the exercise of the police power, is not in violation of the constitutional provision (Art. 1, §21), providing that "no man's particular services, nor his property shall be taken by law without just compensation." p. 366.

4. Same.—*County Superintendents.*—*Judicial Powers.*—*Schools.*— *Licenses.*—Section nine of the act of 1899 (Acts 1899, p. 240, §6393 Burns 1908), providing that the county superintendents, upon a trial, may revoke teachers' licenses, not conferring the exercise of true judicial power, is not in violation of the constitutional provision (Art. 3), providing that the powers of government shall be divided into the legislative, the executive, including the administrative, and the judicial departments. p. 366.

5. Schools.—*Licenses.*—*Revocation.*—*Estoppel.*—A school teacher accepting a license to teach under the school laws of this State,

is not thereby estopped from applying to the courts for the enforcement of his rights thereunder, §6379 Burns 1908, Acts 1899, p. 240, §4, expressly reserving the right to apply to the courts for relief.  p. 367.

6. SCHOOLS.—*Licenses.* — *Revocation.* — *Grounds for.* — *Statutes.*—*Equity.*—*Injunction.*—Where a statute enumerates the causes for which a teacher's license may, be revoked, such enumeration excludes all other grounds; and a court of equity may restrain a revocation sought to be founded upon a cause not so enumerated. p. 367.

7. SAME.—*Licenses.*—*Revocation.*—*Procedure.*—*Appeal.*—A county superintendent has the legal right to determine charges for the revocation of a teacher's license, where the charges are fairly included in the statute providing for such revocation, the teacher's remedy being an appeal to the state superintendent.  p. 368.

8. SAME.—*Licenses.*—*Revocation.*—*Township Institutes.*—*Failure to Attend.*—Teachers are required to attend township institutes, and for neglect thereof their licenses may be revoked.  p. 368.

9. INJUNCTION.—*Licenses.*—*Revocation.*—*Imperfect Charges.* — Injunction does not lie to prevent the revocation of a teacher's license, on the ground that the charges were not sufficiently specific, the remedy being by motion in the original cause.  p. 368.

10. SCHOOLS.—*Licenses.*—*Revocation.*—*Charges.*—*Neglect of Duty.*—Charges showing that a school teacher refused to attend the township institutes, or the county institute, and that he made no daily preparation for teaching, are sufficient to give the county superintendent the right to proceed to a hearing, and, in case of revocation, the teacher's remedy is an appeal.  p. 369.

11. SAME.—*Licenses.*—*Revocation.*—*Bias of County Superintendent.*—*Jurisdiction.*—Injunction does not lie to prevent a county superintendent, having jurisdiction, from trying a proceeding for the revocation of a teacher's license, on the ground that such superintendent is biased and has no judicial capacity.  p. 369.

From Owen Circuit Court; *Joseph W. Williams*, Judge.

Suit by Harry Fritts against William H. Stone, as county superintendent of Owen county. From a decree for plaintiff, defendant appeals. *Reversed.*

*Willis Hickam*, for appellant.
*Oscar Matthews*, for appellee.

MONTGOMERY, J.—Appellee brought this suit to enjoin appellant, as county superintendent, from revoking his license to teach school. It appears from the complaint that

appellee is a school teacher of twenty years' experience, and that on October 16, 1905, while engaged in teaching in Owen county, appellant prepared and filed against him, as such teacher, the following charges and specifications, to wit:    (1) You have refused, without good reason, to board in your school community.  On this account you are unable to reach your school so as to begin daily school sessions at a reasonable time.    (2) You have refused, without reason, to attend the preliminary township institute, and the monthly township institute.   (3) You have refused, without reason, to give regular attendance at the teachers' county institute.    (4) You do not make daily preparation necessary for successful teaching.

Appellee appeared in response to notice, and such proceedings were had as resulted in the dismissal of such charge, and, on completion of his school term, appellant issued to him a success grade of ninety-two per cent as a teacher.  Afterwards appellee secured from the state superintendent a license to teach for twenty-four months from April 28, 1906, and on July 5 following, appellant notified appellee to appear at his office and make answer to the foregoing charges, and show cause, if any, why his license to teach should not be revoked, and, in response thereto, appellee appeared in person and by counsel and caused the hearing to be postponed until July 10.

Appellee further avers that neither of said charges constitutes a cause for the revocation of such license; that appellant has no right nor authority to hear and determine the same; that conceding the sufficiency of such charges appellant has no power to hear and determine the same over the objection of appellee; that section nine of the act of March 3, 1899 (Acts 1899, p. 240, §6393 Burns 1908), is unconstitutional; that the charges are untrue and false; that appellant is not an impartial magistrate, and will, upon such charges, revoke appellee's license to his irreparable damage.

The court below overruled appellant's demurrer to the complaint, and the assignment that this ruling was erroneous presents the disputed questions for our decision.

The statute upon which this proceeding was founded reads as follows: "That the county superintendent shall [have] the power to revoke licenses heretofore granted by himself or predecessors or hereafter granted by the State Superintendent of Public Instruction, for incompetency, immorality, cruelty or general neglect, by the holder, of the business of his school. Due notice of such revocations shall be given in writing by the county superintendent, and an appeal therefrom shall lie to the State Superintendent of Public Instruction, and if the same be taken within five days after notice is given it shall operate as a stay of proceedings until the State Superintendent of Public Instruction shall have passed upon such appeal. The revocation of the license of any teacher shall terminate his employment in the school in which he may have been employed to teach." §6393 Burns 1908, Acts 1899, p. 240, §9.

It is contended on behalf of appellee that this section of the law contravenes §12, article 1, of the state Constitution, which provides that the "courts shall be open; and every man, for injury done to him in his person, property, or reputation shall have remedy by due course of law;" and also violates §21, article 1, which provides that "no man's particular services shall be demanded without just compensation. No man's property shall be taken by law without just compensation;" and violates the provisions of article 3 of the Constitution by conferring judicial power upon a ministerial officer.

This complaint can be held sufficient only upon the ground that the law in question is unconstitutional, or that the proceeding assailed was wholly void for want of jurisdiction over the subject-matter or the person of appellee.

The constitutional questions suggested are not of a serious character. It must be remembered that the establishment

and regulation of public schools rests primarily with
1.  the legislative department, and the constitutional
provisions invoked by appellee were not designed to
trammel the State in the exercise of its general political
powers, or to impose upon the courts the duty of interpos-
ing between the legislature and the citizen in matters of
purely governmental concern.  The legislature, in the
proper exercise of its power, has provided a general sys-
tem of licenses for those who desire to engage in teaching
and has authorized the revocation of any such license by
county superintendents for certain prescribed causes.  A
license has none of the elements of a contract, and does not
confer an absolute right, but only a personal privilege to
be exercised under existing restrictions and such as may
thereafter be reasonably imposed.  Statutes authorizing the
issuance of such licenses are enacted to promote the good
order and welfare of the State, and may ordinarily be re-
pealed at the pleasure of the legislature.  *Calder* v. *Kurby*
(1856), 5 Gray (Mass.) 597; *Freleigh* v. *State* (1844), 8
Mo. 606; *People, ex rel.,* v. *Commissioners, etc.* (1872), 47
N. Y. 501; *State* v. *Burgoyne* (1881), 75 Tenn. 173, 40 Am.
Rep. 60.

In the case of *Doyle* v. *Continental Ins. Co.* (1876), 94
U. S. 535, 540, 24 L. Ed. 148, the Supreme Court of the
United States, in speaking of licenses, said: "The correla-
tive power to revoke or recall a permission is a necessary
consequence of the main power.  A mere license by a state
is always revocable."

The statute authorizing the granting of a license may
provide for its revocation in certain contingencies, and by
accepting and acting under a license, the licensee
2.  consents to all conditions imposed thereby, including
provisions for its revocation.  21 Am. and Eng.
Ency. Law (2d ed.), 826.

In the case of *Commonwealth* v. *Kinsley* (1882), 133
Mass. 578, the supreme court of Massachusetts said: "A

licensee takes his license subject to such conditions as the legislature sees fit to impose, and one of the statutory conditions of this license was that it might be revoked by the selectmen at their pleasure. Such a license is not a contract, and a revocation of it does not deprive the defendant of any property, immunity or privilege within the meaning of these words in the declaration of rights." The supreme court of Illinois, in discussing the proprietary interest of an individual in a license to retail intoxicating liquors said: "He received the license on the condition that it might be revoked if he should sell liquor on Sunday, and he thereby assented to the terms and conditions." *Schwuchow* v. *City of Chicago* (1873), 68 Ill. 444, 450.

It is our conclusion that the act in question does not assume to and does not deny appellee access to the courts for any injury done to him in his person, property or reputation, within the meaning of §12, article 1, of the state Constitution.

The enforcement of regulations enacted in the proper exercise of the police power of the State cannot be resisted as a taking of private property without compensation in violation of §21, article 1, of the state Constitution. *State* v. *Richcreek* (1906), 167 Ind. 217; *Levy* v. *State* (1903), 161 Ind. 251; *City of Aurora* v. *West* (1857), 9 Ind. 74.

It is equally well settled that statutes conferring upon a ministerial officer or board power to issue and to revoke licenses are not invalid and do not clothe such tribunals with judicial power, and in granting, refusing or revoking any such license such tribunal does not exercise judicial power in violation of constitutional provisions. *Spurgeon* v. *Rhodes* (1906), 167 Ind. 1; *State, ex rel.,* v. *Webster* (1898), 150 Ind. 607, 41 L. R. A. 212. We accordingly hold the statute above quoted valid and constitutional, as against the attack of appellee.

The remaining question is whether, in his complaint, ap-

pellee has shown sufficient ground to invoke the aid of a court of equity. In a kindred case the supreme

5. court of New Jersey denied a teacher's right to resort to a court of law, using the following language: "The plaintiff, having accepted an appointment as a teacher under the school law, is bound by all of its provisions, and has barred himself from having the propriety of his dismissal by the local school board reviewed in any tribunal except those specially created by the legislature for the purpose." *Draper* v. *Commissioners, etc.* (1901), 66 N. J. L. 54, 55, 48 Atl. 556.

The rule of estoppel in this State cannot be said to be so strict as the New Jersey doctrine, in view of the following provision: "Nothing in this act, however, shall be construed so as to change or abridge the jurisdiction of any court in cases arising under the school laws of this State; and the right of any person to bring suit in any court, in any case arising under the school laws, shall not be abridged by the provisions of this act." Acts 1899, p. 240, §4, §6379 Burns 1908.

It is the generally accepted doctrine that where a statute or ordinance authorizes the revocation of a license for causes enumerated, such license cannot be revoked upon

6. any ground other than one of the causes specified. 21 Am. and Eng. Ency. Law (2d ed.), 826.

The court of appeals of Kentucky regards the act of a superintendent in revoking a license under the laws of that state as a judicial proceeding, and expressly holds that if in any case the superintendent is proceeding without jurisdiction, the circuit court has power to restrain the proceeding. *Superintendent, etc.,* v. *Taylor* (1899), 105 Ky. 387, 390, 49 S. W. 38. We are not in accord with the Kentucky court in classing the action of a school superintendent in revoking a license as judicial in the technical meaning of that word, but we do hold that he may revoke only for some statutory cause, and if attempting to proceed upon

grounds wholly outside of the statute his action would be without jurisdiction, and upon a sufficient showing a court of equity might intervene to prevent the threatened revocation. If the superintendent is proceeding to hear a

7. charge fairly within the statute, and upon reasonable notice, the accused must follow the procedure provided in the school laws, and, if aggrieved by the decision of the county superintendent, prosecute an appeal to the State Superintendent of Public Instruction. *Moreland* v. *Wynne* (1901), (Tex. Civ. App.), 62 S. W. 1093; *Harkness* v. *Hutcherson* (1897), 90 Tex. 383, 38 S. W. 1120; *Jackson* v. *Independent School Dist.* (1900), 110 Iowa 313, 81 N. W. 596; *Kirkpatrick* v. *Independent School Dist.* (1880), 53 Iowa 585, 5 N. W. 750; *City of St. Joseph* v. *Levin* (1895), 128 Mo. 588, 31 S. W. 101, 49 Am. St. 577; *Carver* v. *School Dist.* (1897), 113 Mich. 524, 71 N. W. 859; *People* v. *Board, etc.* (1853), 17 Barb. 299; *McCrea* v. *Pine Tp. School Dist.* (1891), 145 Pa. St. 550, 22 Atl. 1040; *Roth* v. *Marshall* (1893), 158 Pa. St. 272, 27 Atl. 945. Giving appellee's rights under his license the widest effect allowable, the utmost he could ask or exact of the State is that proceedings to revoke such license be made to conform to the law authorizing such revocation.

Township and county institutes for teachers are required to be held, their attendance is commanded, and pay provided. §§6637, 6638 Burns 1908, Acts 1889, p. 67,

8. Acts 1901, p. 29. The statute quoted authorizes a teacher's license to be revoked for general neglect of the business of his school. It is manifestly upon this ground that the charge under consideration was predicated.

The first specification was not skilfully or aptly phrased, and in itself might not justify the revocation; but the complaint intended, doubtless, was not, as seemingly

9. charged, that appellee, without good reason, refused to board in the school community, but failed to open his school at a reasonable hour, because he needlessly

boarded at a place remote from the school. This feature of the general charge, so far as we are advised, might have been amended or stricken out upon motion before the county superintendent. A party to a pending proceeding is not entitled to relief by injunction for matter from which he might obtain relief by motion in that proceeding itself. 22 Cyc. Law and Proc., 772.

The second and third specifications, as well as the fourth, if true, show a lack of interest in his work and a general neglect of his duty as a teacher and of the business to which his efforts should be directed, and bring the charge within the terms of the statute, and, consequently, give the appellant jurisdiction over the subject-matter. Jurisdiction over the person of appellee is admitted by the averments of the complaint. In these circumstances the conditions under which he accepted his license compelled him to submit to the authority of the school officers, and, if aggrieved by the decision of the county superintendent, seek redress by an appeal to the State Superintendent of Public Instruction. These officers are clothed with special powers and charged with the duty of holding these' institutes, and of laboring in every practical way to elevate the standard of teaching and to improve the condition of the schools. Judicial officers, howsoever wise, should not hastily usurp the prerogatives and functions of such officers, and seek to substitute their own opinions and judgments for those of men held accountable for results in educational affairs.

Tribunals established by law may not infringe upon the jurisdiction of each other, and as this court said in the case of *Board, etc.,* v. *Markle* (1874), 46 Ind. 96, quoting from *Snelson* v. *State, ex rel.* (1861), 16 Ind. 29:

"In the present imperfect state of human knowledge, a power to hear and determine necessarily carries with it a power which makes the determination obligatory, with-

out reference to the question whether it was right or wrong. If this were not so, the judgment or determination of any court would be of no particular value. It might be attacked or avoided at pleasure, upon the ground that the court or judge had committed an error."

If questions affecting the competency and general conduct of teachers may be indiscriminately taken from the determination of school tribunals and submitted to courts and juries, learned or unlearned, as they may be, no discipline or harmonious system can be preserved, but the fate of a teacher may be made to depend upon his pronunciation of such words as Cuba and America, as exemplified in the case of *Carver* v. *School Dist., supra.*

Jurisdiction of the county superintendent being shown, the allegations with respect to his bias and want of judicial capacity are without force. He must answer to the body responsible for his election for the manner in which he discharges his duties so long as he keeps within his legitimate sphere. The complaint is not sufficient to invoke equitable relief, and appellant's demurrer thereto for want of facts should have been sustained.

The judgment is reversed, with directions to sustain appellant's demurrer to the complaint.