[Crim. No. 1843. In Bank.—February 24, 1914.]

## In the Matter of the Application of CHARLES STORK, for a Writ of Habeas Corpus.

CONSTITUTIONAL LAW—REGULATION OF CHAUFFEURS—LICENSE FEES.— The occupation of a chauffeur is one calling for regulation, and therefore permitting a regulatory license fee, under the rule that when a calling or profession or business is attended with danger or requires a certain degree of scientific knowledge upon which others must rely, then legislation properly steps in and imposes conditions upon its exercise.

ID.—CLASSIFICATION OF DRIVERS OF MOTOR VEHICLES—WHETHER REASONABLE.—The Motor Vehicle Act (Stats. 1913, p. 639) is not unconstitutional as making an arbitrary and unwarranted classification, in that it requires professional chauffeurs, or drivers of motor vehicles for hire, to pay an annual license tax, but exempts all other operators of such vehicles from such tax and regulation.

APPLICATION for Writ of Habeas Corpus to be directed against D. A. White, Chief of Police of San Francisco.

The facts are stated in the opinion of the court.

Walter H. Duane, for Petitioner.

U. S. Webb, Attorney-General, Raymond Benjamin, Chief Deputy Attorney-General, and John T. Nourse, Deputy Attorney-General, for Respondent.

HENSHAW, J.—Petitioner, a chauffeur who refused to pay the annual license fee of two dollars exacted by the provisions of the Motor Vehicle Act (Stats. 1913, p. 639), suffered arrest and has sued out this writ of *habeas corpus* under his contention that the portion of the act exacting a chauffeur license fee of two dollars annually is unconstitutional.

His sole contention in this regard is that the legislature without reason and warrant has made an arbitrary classification whereby chauffeurs or drivers of motor vehicles for hire are required to pay a license, while all other drivers of vehicles are classed as ''operators'' and are not required to secure a license or pay a license fee.

Conceding his construction of the law in this respect to be sound, is the division by the legislature of drivers of motor vehicles into the two classes indicated and the exaction of a license fee from the one and not from the other class so unwarranted and arbitrary as to compel a declaration from this court that it is unconstitutional special legislation?

That the occupation of a chauffeur is one calling for regulation and therefore permitting a regulatory license fee is beyond question. ''When the calling or profession or business is attended with danger or requires a certain degree of scientific knowledge upon which others must rely, then legislation properly steps in and imposes conditions upon its exercise.'' (*Minneapolis etc. Railroad Co.* v. *Beckwith*, 129 U. S. 29, [32 L. Ed. 585, 9 Sup. Ct. Rep. 207].) That the occupation of a chauffeur is of this character may not be questioned and has been decided. (*State* v. *Swagerty*, 203 Mo. 517, [120 Am. St. Rep. 671, 11 Ann. Cas. 725, 10 L. R. A. (N. S.) 601, 102 S. W. 483]; *Christy* v. *Elliott*, 216 Ill. 31, [108 Am. St.

Rep. 196, 3 Ann. Cas. 487, 1 L. R. A. (N. S.) 215, 74 N. E. 1035].) There are unquestionable elements of similarity, even of identity, between the driving of an automobile by a professional chauffeur and the driving of a like vehicle by a private owner, designated in this act as an "operator." Thus it may not be gainsaid that the ignorance of the one is as likely to result in accident as the same ignorance upon the part of the other. The recklessness of the one is as likely to result in injury as the recklessness of the other. It is equally dangerous to other occupants and users of the highway whether the unskilled or reckless driver be a chauffeur or "operator." All these matters may be conceded, and yet there are others of equal significance where the differences between the two classes of drivers are radical. Of first importance in this is the fact that the chauffeur offers his services to the public and is frequently a carrier of the general public. These circumstances put professional chauffeurs in a class by themselves and entitle the public to receive the protection which the legislature may accord in making provision for the competency and carefulness of such drivers. The chauffeur, generally speaking, is not driving his own car. He is intrusted with the property of others. In the nature of things a different amount of care will ordinarily be exercised by such a driver than will be exercised by the man driving his own car and risking his own property. Many other considerations of like nature will readily present themselves, but enough has been said to show that there are sound, just, and valid reasons for the classification adopted. The argument of the peril attending the public at the hands of the unlicensed operator driving his own car is not without force, but it can only successfully be presented to the legislative department and not to the courts.

In conclusion it may be said that while on reason we hold the classification to be sound and the license fee therefore legal, no case where any court of last resort has taken a contrary view has been called to our attention, while, besides the intimations in the cases above cited, this precise conclusion was adopted by the court of appeals of Maryland in *Ruggles* v. *State*, 120 Md. 553 [87 Atl. 1080].

Wherefore, the writ is discharged and the petitioner is remanded.

Shaw, J., Angellotti, J., Lorigan, J., Melvin, J., and Sloss, J., concurred.