[Crim. No. 812. Second Appellate District, Division One.—September 21, 1921.]

In the Matter of the Application of A. G. BRUCE for a Writ of Habeas Corpus.

[1] MUNICIPAL CORPORATIONS — LICENSE TAX — AUCTIONEERS — ORDINANCE NOT DISCRIMINATORY.—Provisions of a municipal ordinance requiring persons selling real estate, livestock, or second-hand goods at public auction to pay a license tax of fifty dollars per year, and requiring persons selling any other property at public auction to pay a license tax of ten dollars per day, are not void as being discriminatory.

APPLICATION for a Writ of Habeas Corpus to secure release from custody after conviction of violation of a municipal ordinance. Denied.

The facts are stated in the opinion of the court.

L. E. Dadmun for Petitioner.

C. G. Selleck for Respondent.

JAMES, J.—Petitioner was convicted in the police court in the city of San Diego of the offense of having conducted the business of an auctioneer without having first procured a license from said city entitling him so to do. He seeks to be discharged from custody of the chief of police on the ground that the ordinance, under the terms of which his conviction resulted, is unconstitutional and void. The particular contention made is that the ordinance in question, as its terms affect the business of auctioneering, is discriminatory. A copy of the ordinance is attached to the petition and in section 29 thereof we find the following provisions: "Class A. For every person who sells or offers for sale at public auction any real estate, live stock, or second hand goods, wares or merchandise, the sum of fifty dollars ($50.00) per year. Class B. For every person who sells or offers for sale at public auction any other property than real estate, live stock or second hand goods,

wares or merchandise, or who sells or offers for sale at public auction any real estate, live stock or second hand goods, wares or merchandise, together with other property, the sum of ten dollars ($10.00) per day." The charge as made by the complaint filed against petitioner declared that he did willfully and unlawfully "sell and offer for sale at public auction, new goods, wares and merchandise, without having first secured a license." From the whole text of the ordinance in question it appears that its provisions were designed to be in part regulatory and in part for purposes of revenue. If that portion of it having to do with this petitioner's case could be said to be of a purely regulatory nature and hence to be justified under the police power, there would be little room for any contention to be made against its validity. "The police power, the power to make laws to secure the comfort, convenience, peace and health of the community, is an extensive one and in its exercise a very wide discretion as to what is needful or proper for the purpose is necessarily committed to the legislative body in which the power to make such laws is vested. · (*Ex parte Whitwell*, 98 Cal. 73, [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870].) . . . The manner and extent of such regulation are primarily legislative questions, and the courts will not interfere unless it clearly appears that the legislature has, under the guise of regulation, imposed an arbitrary or unreasonable burden upon the use of property or the pursuit of an occupation." (*County of Plumas* v. *Wheeler*, 149 Cal. 758, [87 Pac. 909].) And the purposes of a taxing ordinance may be of a mixed nature and include both regulatory provisions and those designed to produce a revenue. (*San Francisco* v. *Liverpool etc. Ins. Co.*, 74 Cal. 113, [5 Am. St. Rep. 425, 15 Pac. 380].) Conceding that an ordinance of the kind here presented, of mixed purpose and intent, is to be measured according to constitutional limitations affecting revenue measures, nevertheless every reasonable presumption will be indulged in as to its regularity, and if its terms, in any condition of the subject dealt with, appear valid, it will be sustained. "A municipal ordinance must be very clearly obnoxious to such objections as those made, or some one of them, before it will be declared invalid by

.the courts. Every intendment is' to be indulged in favor of its validity, and all doubts resolved in a way to uphold the law-making power; and a contrary conclusion will never be reached upon light consideration. It is the province and right of the municipality to regulate its local affairs—within the law, of course—and it is the duty of the courts to uphold such regulations, except it manifestly appear that the ordinance or by-law transcends the power of the municipality, and contravenes rights secured to the citizen by the constitution, or laws made in pursuance thereof. . . . The very power to license for purposes of regulation and revenue involves the right to make distinctions between different trades and between essentially different methods of conducting the same general character of business or trade.'' (*Ex parte Haskell*, 112 Cal. 412, [32 L. R. A. 527, 44 Pac. 725].) Under an ordinance imposing a license tax for revenue an apparent discrimination may appear to be made between persons engaged in the same general business. The difference in the amount exacted is justified where it can be referred to the volume of business done or profits realized. The bare terms of such an ordinance may not demonstrate that such a difference exists, but that is a matter which the legislative body of the municipality must be presumed to have considered and determined. In the case of the provisions of the ordinance before us, we are not required to say that it appears that persons such as would fall within ''Class B'' necessarily must transact a business greater in volume or profit than those included in Class ''A.'' It seems altogether within reason that such may be the case; that being true, we must here assume in support of the ordinance that such would be the condition of the business. In *Ex parte Lemon*, 143 Cal. 558, [65 L. R. A. 946, 77 Pac. 455], there was considered an ordinance of a city which required persons conducting a restaurant or boarding-house to pay a license tax of three dollars per month where the meals were cooked and served by the proprietor or members of his family, and to pay eight dollars per month in other cases. The ordinance was attacked as being discriminatory. It was sustained by the supreme court. **[1]** In the light of that decision and the reasoning of it, we find no difficulty in concluding that the

terms of the ordinance under which petitioner was prosecuted are valid.

The writ is discharged and the petitioner remanded to the custody of the chief of police of the city of San Diego.

Conrey, P. J., and Shaw, J., concurred.